STATE OF NORTH CAROLINA v. GEORGE WRIGHT, JR.

No. 7215SC399

(Filed 28 June 1972)

**1. Homicide § 21; Indictment and Warrant § 17— date of shooting — date of death — variance**

There was no fatal variance between an indictment alleging that defendant killed decedent on May 24 and evidence that decedent died on June 4 from a shotgun wound inflicted by defendant on May 24.

**2. Criminal Law § 75— voluntary statement — absence of written waiver of counsel**

No written waiver of counsel was required by former G.S. 7A-457 for the admission of testimony by the sheriff that defendant walked into the sheriff's office and voluntarily stated that he had shot decedent.

**3. Homicide § 21— self-defense — jury question**

The State's evidence did not establish as a matter of law that defendant acted in self-defense when he shot the victim, that being a question for the jury, where it tended to show that defendant and the victim had an argument, that defendant told the victim not to come in his yard, that the victim went to the front door of his house trailer and told his girl friend "to hand him his 38," that the victim reached his hand into the trailer, that the victim was not seen then or later with a pistol in his hand or on his person, that the victim then came back toward defendant's yard and told the defendant that he was going to kill defendant or defendant was going to kill him, that defendant went into his house trailer and got his shotgun, and that defendant shot the victim when the victim stepped into defendant's yard.

APPEAL by defendant from *Hobgood, Judge,* 1 November 1971 Session of Superior Court held in ORANGE County.

Defendant was charged in a bill of indictment with the felony of murder in the first degree in the killing of Chester Daye on 24 May 1971. Upon his plea of not guilty, he was tried by jury.

The State's evidence tended to show the following: On 24 May 1971, Chester Daye (Chester) lived in a house trailer in Hillsborough, parked upon a lot adjacent to the house trailer in which defendant lived. During the morning of 24 May 1971, Chester and defendant were at the home of one James Henderson drinking gin. Chester began to argue with defendant about two dollars that Chester claimed defendant's brother owed him. Defendant told Chester he had nothing to do with

that. Chester cursed defendant and defendant cursed Chester. Chester threatened to kill defendant.

Later in the morning, Chester and defendant returned to their respective house trailers. Chester stood in the front yard of his house trailer and cursed defendant who was standing outside the front door of his house trailer. Chester started into defendant's yard and defendant told him not to come into the yard. Chester went to the front door of his house trailer and told his girl friend "to hand him his 38 out of there." Chester reached his hand into the trailer, but he did not go in. Chester was not seen then or later with a pistol in his hand or on his person. Chester then came back toward the edge of defendant's yard and "told George [defendant] he was going to kill him or George was going to kill him one." Defendant went into his house trailer and got his shotgun. He told Chester not to come into the yard. Chester kept coming forwards and stepping back. Chester stepped over into defendant's yard and defendant shot him.

Immediately thereafter, defendant walked to Sheriff Knight's office and told the sheriff he had killed Chester Daye. The rescue squad carried Chester to Watts Hospital in Durham. Extensive surgery was performed on Chester in an effort to repair the wound, but three days later it was required that his entire right leg be amputated at the hip joint. Chester's condition deteriorated until he expired on 4 June 1971. In the opinion of Dr. James Fuchs, the treating surgeon, the primary cause of death was kidney failure brought about because of massive shotgun wound injury. In the opinion of Dr. John T. Dailey, the examing pathologist, the cause of death was a shotgun wound with subsequent development of pneumonia and kidney failure.

Defendant offered no evidence.

From a verdict of guilty of voluntary manslaughter and a prison sentence of not less than fourteen nor more than eighteen years, defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Giles, for the State.*

*Everett, Everett & Creech, by Robinson O. Everett and James B. Craven III, for the defendant.*

BROCK, Judge.

[1] Defendant assigns as error that the trial judge allowed medical testimony of events subsequent to 24 May 1971, the date of the homicide as alleged in the indictment, and that the trial judge failed to dismiss all charges of homicide because of fatal variance between the indictment and the State's evidence. The point of defendant's assignment of error is that the indictment alleges that defendant killed Chester Daye on 24 May 1971, but that the State's evidence shows that Chester Daye died on 4 June 1971.

Defendant acknowledges that the decisions of the Supreme Court of North Carolina in *State v. Baker,* 46 N.C. 267 (1854) and in *State v. Pate,* 121 N.C. 659, 28 S.E. 354 (1897) are squarely in point and are against his contentions. Defendant, nevertheless, argues that the rationale of these two cases should be reexamined. We have given considerable study to the matter and are convinced that there is no fatal variance between the indictment and the proof. The indictment alleges the date upon which defendant fired the shot which injured Chester Daye. The evidence tended to show that defendant fired the shot and injured Chester Daye on the date alleged in the indictment. The fact that Chester did not die from the wound until eleven days later does not create a fatal variance. The only conduct of which the State complains was defendant's conduct on 24 May 1971 as alleged in the indictment. This assignment of error is overruled.

[2] Defendant assigns as error that the trial judge permitted Sheriff Knight to relate defendant's inculpatory statement without first obtaining a written waiver of counsel in accordance with the holding in *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561.

The present case does not fall within the prohibition of *Lynch.* Here, the defendant walked into the office and, without prompting, stated to Sheriff Knight that he had shot Chester Daye. The only testimony given by the sheriff in the presence of the jury was the statement volunteered by defendant. There was no duty upon the sheriff to anticipate that defendant was going to step into his office and admit he had shot Chester Daye. Defendant was not under investigation, nor was he interrogated, until after his voluntary statement. The police are under no duty to stop a person from spontaneously stating

that he has committed a particular crime. This assignment of error is overruled.

[3] Defendant assigns as error the failure of the trial judge to dismiss the charges. Defendant contends the State's evidence shows as a matter of law that he acted in self-defense.

While it is true that the State's evidence raised an issue of self-defense for defendant, it did not as a matter of law excuse his conduct. In this case, the reasonableness of defendant's apprehension was a question for jury consideration. See, *State v. Miller*, 267 N.C. 409, 148 S.E. 2d 279. This assignment of error is overruled.

We have carefully considered defendant's remaining assignments of error, which are to the charge of the court to the jury, or its failure to charge. In our opinion, the case was submitted to the jury upon all of the issues raised by the evidence and upon applicable principles of law.

No error.

Chief Judge MALLARD and Judge CAMPBELL concur.