STATE OF NORTH CAROLINA v. ROLAND NORMAN JARVIS, JR.

No. 8126SC864

(Filed 6 April 1982)

1. **Criminal Law § 87— asking witness similar question—no prejudicial error**

    The trial court did not err in allowing the State to ask the prosecuting witness, who was thirteen at the time, whether she had heard a tape recording in the prosecutor's office after the witness had already testified that she had not heard the recording since making it.

2. **Criminal Law § 70—testimony and ruling concerning introduction of recording—proper**

    The trial court properly allowed a prosecuting witness in a trial for incest to testify as to a recording's accurate reproduction of events and the recorder's proper functioning. Further, the trial judge properly listened to the recording, allegedly made while the prosecuting witness's adoptive father made advances to her, prior to ruling on its admissibility.

3. **Criminal Law § 34.8— use of recording to show common plan or scheme—instructions proper**

    Where a recording concerning a sexual offense, other than the offense for which the defendant was charged, was played for the jury, the court properly instructed that the State was offering the evidence solely for the purpose of showing that there existed in defendant's mind a common scheme, plan or design to commit the crime for which he was charged.

APPEAL by defendant from *Johnson, Judge.* Judgment entered 7 April 1981, in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 1 February 1982.

Defendant was charged by two indictments, proper in form, with the crimes of incest and second degree rape. At trial, the State's evidence tended to show that, on 25 August 1980, defend-

ant, the adoptive father of the prosecuting twelve-year old witness, forced his daughter to engage in vaginal intercourse. This was not the first time defendant had engaged in sex with the young girl. As early as June 1979, he had begun to fondle her and, in July 1979, had first had intercourse with her. From July 1979 to August 1980, defendant had intercourse with her two or three times a week.

The defendant's evidence tended to show that the prosecuting witness had complained to her mother about the defendant's advances and that the girl's mother and the defendant had taken the girl to a gynecologist for a physical examination. Dr. William Toler, the examining physician, testified that he examined the prosecuting witness in August 1980, and that his examination showed that the girl's hymenal ring was intact. In Dr. Toler's opinion, the child could not have had vaginal intercourse with a normal adult male twenty to forty times without rupturing the hymenal ring. Defendant's evidence further tended to show that his reputation in the community was good.

The State presented rebuttal evidence tending to show that defendant's reputation and character within the community was not good. To rebut Dr. Toler's testimony, Dr. Katherine Johnson, an expert in the field of obstetrics and gynecology, testified that she had examined the prosecuting witness, that the girl's hymenal ring was intact, and that, despite this, in her opinion, the girl could have had vaginal intercourse at least 20 times, depending on the elasticity of the ring.

The jury returned verdicts of guilty to both charges. The trial court sentenced defendant to consecutive prison terms and recommended that defendant be given psychological and physical examinations and any aversion therapy beneficial to the defendant. From this judgment, defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General Lester V. Chalmers, Jr., for the State.*

*Levine, Goodman & Carr, by Michael P. Carr, for defendant-appellant.*

MORRIS, Chief Judge.

Prior to defendant's trial, defense counsel filed a motion to suppress a tape recording allegedly made by the prosecuting witness while defendant was forcing her to have sexual intercourse with him. The record shows that, in a pretrial hearing, the trial court, Judge Allen presiding, held an extensive *voir dire* hearing to determine admissibility of the recording. At the end of the hearing, the court entered an order allowing the State to admit the recording into evidence and at trial the recording was, in fact, admitted.

[1] In this appeal, six of the seven questions defendant raises are concerned with alleged errors occurring during the *voir dire* hearing, in the court's order, or with the manner in which the recording was presented to the jury. The first argument is that, during the *voir dire*, the court erred in allowing the State to ask the prosecuting witness whether she had heard the tape recording in the prosecutor's office after the witness had already testified that she had not heard the recording since making it. We find nothing wrong with the trial court's allowing this question. It is apparent from the record that the prosecuting witness, who was thirteen years of age at the time of trial, had forgotten that she had listened to the recording in the prosecutor's office. The prosecutor's question simply rephrased his earlier question calling the witness' attention to the circumstances under which she had heard the recording. We find no prejudicial error which, if corrected, might have led to a different result in the hearing and, therefore, in the trial. G.S. 15A-1443(a).

By his next three assignments of error, defendant contends that the court erred (1) in allowing the prosecuting witness to testify that the recording accurately reproduced everything that happened, (2) in allowing her to testify that the recorder was capable of recording when she made the tape, and (3) by listening to the recording prior to ruling on its admissibility. Further, by his fifth assignment of error, defendant contends that the court erred in admitting the recording because it was not properly authenticated. Although we can find no case squarely on point with the case at bar, we have determined that there is no merit in defendant's argument.

In *State v. Godwin,* 267 N.C. 216, 147 S.E. 2d 890 (1966), the Supreme Court held that tape recordings of telephone conversations between the defendant and the prosecuting witness were properly authenticated and, therefore, admissible into evidence where the prosecuting witness identified the voices and testified that the recordings were a fair and accurate representation of the conversations she had had with the defendant. In a later case, *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), the Supreme Court enumerated the steps necessary to lay a proper foundation for the admission of a defendant's recorded confession or incriminating statement made to law enforcement officers. Upon objection to the introduction of the recording, the court must conduct a *voir dire* to determine to its satisfaction (1) that the recorded testimony was legally obtained and otherwise competent; (2) that the mechanical device was capable of recording and that it was functioning properly at the time of the recording; (3) that the operator was competent and operated the machine properly; (4) that the recorded voices can be identified; (5) that the recording is accurate and authentic; (6) that the defendant's entire statement was recorded and no changes, additions or deletions, have since been made; and (7) that there was a proper custody and manner of preserving the recording since it was made.

The steps for authentication set forth in *Lynch* have been applied also for authenticating recorded statements made between a defendant and one who later becomes a witness for the State. *See State v. Detter,* 298 N.C. 604, 260 S.E. 2d 567 (1979). The Court in *Detter* stated:

> Whenever a recorded statement is introduced into evidence the seven steps set forth in Lynch should be followed to insure proper authentication of that recording. 29 Am. Jur. 2d Evidence § 436 (1967); Annot., 58 A.L.R. 2d 1024, § 4 (1958) and cases cited therein. It is apparent, from a close reading of both Godwin and Lynch, that the seven steps enumerated in Lynch are but a further breakdown and more precise statement of the requirements for authentication that are subsumed within the second requirement in Godwin that the recording be a "fair and accurate representation of the conversations." *State v. Godwin,* supra at 218, 147 S.E. 2d at 891.

*Id.* at 628, 260 S.E. 2d at 584. We believe that the requirements for admitting into evidence tape recordings made by witnesses

after police intervention, should strictly apply to cases such as the present one where tape recordings are made by victims of an alleged crime before the police have intervened. With these requirements before us, we now review defendant's four assignments of error.

[2] Defendant's argument that the trial court should not have allowed the prosecuting witness to testify as to the recording's accurate reproduction of events and the recorder's proper functioning is patently absurd. Under the *Lynch* requirements, the trial court had to determine that the recording was accurate and that the mechanical device was capable of recording. The only person capable of producing evidence on these issues was the prosecuting witness. Furthermore, we reject defendant's argument that the trial judge should not have listened to the recording prior to ruling on its admissibility. In the *Lynch* case, the Supreme Court stated that, upon an objection to the introduction of a recorded statement, the trial judge should not only hold a *voir dire*, but should also listen to the recording in the absence of the jury. " 'In this way he can decide whether it is sufficiently audible, intelligible, not obviously fragmented, and, also of considerable importance, whether it contains any improper and prejudicial matter which ought to be deleted.' " *State v. Lynch,* supra at 17, 181 S.E. 2d at 571, quoting *State v. Driver,* 38 N.J. 255, 288, 183 A. 2d 655, 672.

Similarly, after carefully reviewing the record in this case, we reject defendant's claim that the trial court's order admitting the recording into evidence was erroneous within the *Lynch* holding. The order about which defendant complains contained sufficient findings of fact supported by competent evidence that would allow the court to conclude, as it did *seriatim,* that the seven requirements of *Lynch* were met.

[3] Defendant's final argument concerning the tape recording is that the court erroneously instructed the jury about the purpose for which the tape recording was admitted. The record shows that the recording was made on a day other than 25 August 1980, the date of the offense for which the defendant was charged. We, therefore, find no merit in defendant's argument that the trial court erred when it instructed the jury that the State was offering the evidence solely for the purpose of showing that there ex-

isted in defendant's mind a common scheme, plan or design to commit the crimes for which he was charged.

By his seventh assignment of error, defendant contends that the court erred in admitting into evidence a driver's travel log sheet which allegedly showed where the defendant, a truck driver, was on 24 and 25 August 1980. The basis of defendant's contention is that the prosecutor, who received the sheet two days before trial, failed to comply with a discovery request filed by the defendant. Defendant, however, has failed to include in the record on appeal a copy of his request for discovery or a copy of an order pertaining to discovery. We cannot, therefore, determine whether the State complied with the order or with defendant's request. Nevertheless, in reviewing the record, we find that defendant was given a recess in order to review the log sheet with defendant. This remedy is permissible under G.S. 15A-910(2), and we find, in view of the evidentiary value of the log sheet, that a recess was the appropriate and proper remedy.

In defendant's trial, we find

No error.

Judges VAUGHN and MARTIN (Harry C.) concur.