STATE OF NORTH CAROLINA v. PAT BURNETTE SHOOK

No. 8128SC525

and

No. 8128SC618

(Filed 5 January 1982)

**Criminal Law § 70— tape recordings—admission without voir dire hearing**

Where defendant objected to the introduction of tape recordings of conversations between a law officer and defendant, the trial court erred in admitting the tape recordings without conducting a voir dire hearing to determine whether the recordings met the applicable standards for admission.

APPEAL by defendant from *Kirby, Judge* in No. 8128SC525. Judgments entered 5 December 1980 in Superior Court, BUNCOMBE County. Appeal by defendant from *Thornburg, Judge* in No. 8128SC618. Order revoking defendant's appearance bond entered 24 March 1981 in Superior Court, BUNCOMBE County. Both cases heard in the Court of Appeals 11 November 1981.

Defendant was charged with conspiracy to commit the crime of prostitution. She was found guilty in District Court and appealed to Superior Court. Defendant was later indicted for offering a bribe to a detective of the Asheville Police Department. The prostitution charge and the bribery charge were consolidated for trial in Superior Court over defendant's objection. Following a jury verdict of guilty in both cases and an active prison sentence, defendant appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Swain & Stevenson, by Joel B. Stevenson and Kenneth T. Davies, for defendant appellant.*

BECTON, Judge.

I

A. State's Evidence

During July and August 1980 the Asheville Police Vice Squad conducted an investigation of Classic Escort Service, a business owned and operated by defendant. During this period, Vice Squad detectives observed females employed by defendant leaving the business with males and accompanying them to motel rooms. Later four of these employees pleaded guilty to prostitution.

Detective Vance Smith testified that he initially went to defendant's place of business on 22 July 1980 to investigate a complaint of vandalism. At that time defendant asked him if he had any information regarding an investigation of her business. She informed Smith that such information "would be worth a dinner or something of that nature." Smith discussed this conversation with his supervisor and began tape-recording his subsequent conversations with defendant. On 8 August 1980 defendant told Smith she would pay him $200 a month for the information. Four days later defendant met with Smith in his van and paid him the $200 in cash. She was arrested upon leaving the van.

B. Defendant's Evidence

Defendant testified that she has known Smith since 1973 and had sexual relations with him at least six times in 1979 and 1980. She testified that she met with Smith in July 1980 to discuss his coming to work for her as a security guard for $200 a month and that Smith was the one who suggested the idea of his receiving money in exchange for information. Defendant denied having any knowledge that her employees were prostitutes.

II

In her prostitution and bribery cases, defendant brings forward five assignments of error. We have examined each one and deem Assignment of Error No. 2 to be dispositive on appeal. Therein defendant assigned error to the admission into evidence of various tape recordings of alleged conversations between her and Smith during August 1980. She alleged that the tapes were played to the jury over her objections and before any proper foundation was laid. Prior to their admission into evidence, Smith

testified about his conversations with defendant from 4 August until 12 August 1980. He then informed the jury that six of these conversations had been recorded. The State proceeded to play tapes of conversations between defendant and Smith which allegedly occurred on 6, 8, 11 and 12 August. The record on appeal indicates that portions of each tape were inaudible, and that the court reporter made no attempt to transcribe any of the tapes.

We agree with defendant that this evidence constituted prejudicial and reversible error. In *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), our Supreme Court emphasized that tape-recorded evidence must be properly authenticated before it is admissible. The trial court must, therefore, conduct a *voir dire* hearing to determine the tapes' admissibility upon objection to their introduction. During such a *voir dire* hearing, the State must satisfy the trial court of the following:

(1) That the recorded testimony was legally obtained and otherwise competent;

(2) that the mechanical device was capable of recording testimony and that it was operating properly at the time the statement was recorded;

(3) that the operator was competent and operated the machine properly;

(4) the identity of the recorded voices;

(5) the accuracy and authenticity of the recording;

(6) that defendant's entire statement was recorded and no changes, additions, or deletions have since been made; and

(7) the custody and manner in which the recording has been preserved since it was made. [Citations omitted.]

279 N.C. at 17, 181 S.E. 2d at 571. The *Lynch* Court further emphasized that such a *voir dire* enables the trial judge to determine whether the tapes are audible, intelligible, or fragmentary and whether they contain improper or prejudicial matter. In addition, the *voir dire* provides counsel the opportunity to object to portions of the tapes which he deems to be incompetent. Incompetent matters can, therefore, be kept from the jury.

In the case *sub judice* defendant timely objected to the playing of each taped conversation. The trial court overruled each objection and allowed the tapes to be played before the jury. No *voir dire* hearing was ever conducted. Detective Smith identified the voices on the tapes as his and defendant's. He testified that he operated the tape recorder; that the tapes had not been altered; and that the tapes had been stored in the safe since the meetings with defendant. His testimony, however, also reveals that large portions of the tapes were either inaudible or unintelligible. Indeed, as to one tape recording, the trial court was compelled to say:

> COURT: Can we agree that this recording is probably audible if someone uses a different type of listening device? To listen to it the way we are, apparently is a waste of our time.

These observations raise the question of whether the recording device was operated properly. More important, it raises doubts as to the accuracy of the recordings. Significantly, the trial court's remarks, that one of the inaudible recordings was probably audible if someone used a different type of listening device and that a transcript had been made of the tape, may have given the impression that the court believed the tape to be accurate. In addition, Smith was allowed to testify from alleged transcripts of the tapes, even though there appeared to be discrepancies in a transcript typed by the police department and one prepared for the defense.

Since the publicity surrounding the Watergate hearings and particularly the infamous "gap" in the Nixon tapes, we believe that the American public (indeed, a jury) may be inclined to view gaps or inaudible portions in a taped conversation between an accused person and others as containing evidence which would incriminate the accused. The trial court's conduct in the case *sub judice* lends credence to this belief. Defendant was clearly prejudiced by the failure of the trial court to follow the requirements as mandated by *Lynch* and is entitled to a new trial.

Other assignments brought forward by defendant involve matters that should not recur at a subsequent trial.

### III

After giving notice of appeal following her conviction on prostitution and bribery charges, defendant was released upon posting a $30,000 bond which contained, among other things, the following special condition: "To cease and desist in any private enterprise, and to clear any business activities through the District Attorney's office, to be reviewed by the Presiding Judge." On 17 March 1981, the District Attorney, alleging that defendant was still the owner and operator of Classic Escort Service, a business engaged in prostitution, moved that defendant's bond be revoked and that she commence serving her prison sentence. A show cause order was issued on 17 March 1981, and the matter came on for hearing on 23 March 1981. The trial court made findings, concluded that defendant had violated the special condition of her bond, ordered her appeal bond revoked and placed her in custody. Defendant appealed and moved the trial court to stay execution of its order. The trial court denied her motion, and defendant then filed a petition for temporary stay and a petition for writ of supersedeas with this Court. We first granted the petition for a temporary stay and then granted the petition for a writ of supersedeas. Defendant's appeal then followed its normal course.

It is not necessary to address defendant's assignment of error concerning the order revoking her bond, since we granted her petition for a temporary stay and her petition for a writ of supersedeas. The issues she brings forward are moot. She has not suffered a loss in No. 8128SC618, the bond revocation proceeding, and she has been granted a new trial in No. 8128SC525, the prostitution and bribery cases.

For the foregoing reasons, defendant is entitled to a

New trial.

Chief Judge MORRIS and Judge ARNOLD concur.