State v. Ruiz

No. 8412SC1305

(Filed 15 October 1985)

1. Criminal Law § 73.4— hearsay statements—admissible as excited utterance

There was no error in a prosecution for conspiring to traffic in a controlled substance and trafficking in a controlled substance where one of the arresting officers testified that defendant was driven back to his home to make arrangements for the care of his children, that a woman there became excited and said to defendant when he and two officers walked in, "I told you not to go. I told you not to do it that you would get in trouble, you would get caught." The evidence was clearly a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. G.S. 8C-1, Rule 803.

2. Criminal Law § 69— tape recording of telephone conversation—admitted—no error

The trial court did not err in a prosecution for conspiring to traffic in cocaine and trafficking in a controlled substance by possession where the court permitted a tape recording of a conversation between an informant and defendant to be played to the jury and required defendant to give a voice exemplar by reading from a transcript of the tape the lines spoken by a voice that sounded like his where defendant denied taking part in any telephone conversation about a drug transaction. The tape and defendant's reading were used for impeachment during cross-examination; moreover, testimony elicited by the State during rebuttal substantially completed authentication of the

tape, except for identifying defendant's voice, which was left to the jury. G.S. 8C-1, Rule 611(b), G.S. 8C-1, Rule 901.

**3. Criminal Law § 138— conspiring to traffic in a controlled substance — trafficking in a controlled substance by possession — sentence of two consecutive seven year prison terms — no error**

The trial court did not err when sentencing defendant to two consecutive seven year terms for conspiring to traffic in cocaine and trafficking in a controlled substance by possession, even though those sentences exceed the presumptive terms for Class G felonies, because G.S. 90-95(h)(3)a and G.S. 90-95(i) provide that a person convicted of trafficking or conspiracy to traffic in cocaine in an amount between 28 and 200 grams shall be sentenced to a term of at least seven years. G.S. 15A-1340.4(f).

APPEAL by defendant from *Herring, Judge*. Judgment entered 2 August 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 29 August 1985.

Defendant was charged with and convicted of conspiring to traffic in a controlled substance (cocaine) and trafficking in a controlled substance by possession. The charges stemmed from a transaction that occurred on 15 March 1983, whereby agents of the City-County Bureau of Narcotics arranged through a police informant, Ahmer Ali Quershi, to purchase cocaine from defendant and another individual. While Quershi waited in his car in the parking lot of a shopping mall a red Toyota automobile pulled up and a passenger from that car got in Quershi's car, and then drove away. On a pre-arranged signal from Quershi law enforcement officers approached the car, arrested Renaldo Torna and seized two ounces of cocaine from him. On information from Torna the officers traced the red Toyota to a trailer home in Fayetteville and arrested the two men they found there, one of whom was defendant. Torna turned State's evidence and testified that he and defendant agreed to traffic in the cocaine and that defendant was driving the red Toyota. Defendant, testifying in his own behalf, claimed that he did not know about the cocaine and only drove the car at Torna's request.

*Attorney General Thornburg, by Assistant Attorney General William N. Farrell, Jr., for the State.*

*James R. Parish for defendant appellant.*

PHILLIPS, Judge.

[1]   At trial, one of the arresting officers testified over defendant's objection that defendant was driven back to his home to make arrangements for the care of his children. When he and two officers walked in, a woman in the room, presumed by the witness to be defendant's girlfriend, became excited and said to defendant, "I told you not to go. I told you not to do it that you would get in trouble, you would get caught." Defendant contends that it was error to receive this testimony because it was hearsay and the declarant was neither identified nor offered as a witness by the State. We disagree. Under the provisions of G.S. 8C-1, Rule 803, an "excited utterance," defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is not excluded by the hearsay rule. The evidence involved was clearly such an utterance, and the court did not err in receiving it. Such utterances were also admissible under court developed rules before the present rules of evidence were enacted. *See*, 1 Brandis N.C. Evidence Sec. 164 (1982).

[2]   On cross-examination by the State, defendant denied making certain statements in a telephone conversation with the informant Quershi in which the cocaine transaction involved was allegedly arranged, and the State offered to play a tape recording of the conversation. Before permitting the tape to be run the court held a *voir dire* to determine only whether the tape could be used to impeach defendant's testimony, and no inquiry was made as to the tape's authenticity. After hearing the tape, the court allowed it to be played twice in its entirety for the jury. Cross-examined about it defendant conceded that the voices on the tape sounded like his and Quershi's, but denied taking part in any telephone conversation about a drug transaction. He was then required, over objection, to give a voice exemplar for the jury by reading from a transcript of the tape the lines spoken by the voice that sounded like his. He contends that permitting the tape and the transcript to be used in this manner was error because the tape had not been authenticated, as *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971) and *State v. Shook*, 55 N.C. App. 364, 285 S.E. 2d 328 (1982) require. These decisions stand for the proposition that before a recorded statement can be received as substantive evidence, it must be authenticated. But at the time complained of

the tape and defendant's reading were not used for substantive purposes. They were used for impeachment during cross-examination, and "[a] witness may be cross-examined on any matter relevant to any issue in the case, *including credibility,*" G.S. 8C-1, Rule 611(b) (emphasis added). That a witness's credibility can be affected by evidence of prior inconsistent statements has been recognized since the earliest days of our jurisprudence. *Murphy v. McNeil,* 19 N.C. 244 (1837). And the voice exemplar had the further purpose of identifying defendant as the person who made the prior inconsistent statement. *See State v. Looney,* 294 N.C. 1, 240 S.E. 2d 612 (1978); *State v. Coleman,* 270 N.C. 357, 154 S.E. 2d 485 (1967); 1 Brandis, *supra* Secs. 38, 46.

On rebuttal, the State elicited testimony from one of the investigating officers to the effect that: He was with Quershi when the taped conversation took place and recorded it; the tape played in court was a tape of that conversation and one of the voices recorded was Quershi's; the tape had not been altered or tampered with since the conversation was recorded and he had had custody of the tape ever since. The officer was not allowed to identify the other voice on the tape since the jurors, who had heard the tape and heard defendant testify and give the voice exemplar, were as well qualified to make that determination as the officer was. The tape was then admitted into evidence over defendant's objection that it had not been authenticated. The State's argument that the tape and testimony were limited to impeachment purposes is without merit. No limiting instructions were either requested or given. Under the circumstances, therefore, it would have been appropriate for the court to conduct a *voir dire* to determine the tape's authenticity. *State v. Lynch, supra; see generally,* 2 Brandis N.C. Evidence Sec. 195 (1982). But G.S. 8C-1, Rule 901, states that the requirement of authenticity "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"; and in our opinion the testimony of the State's rebuttal witness substantially completed the authentication of the tape, except for identifying the defendant's voice, which was wisely left for the jury to determine, since they had heard the tape, the testimony of defendant and Quershi about it, and defendant's voice exemplar. Under the peculiar circumstances that developed, if the failure to formally complete the authenticity process was error, it was harmless.

[3]  Though no aggravating factors were found the court sentenced defendant to two consecutive seven year prison terms. These sentences exceed the presumptive terms for Class G felonies, but they do not violate the Fair Sentencing Act, as defendant contends. This is because the presumptive terms set forth in G.S. 15A-1340.4(f) do not apply where the sentence for an offense is otherwise specified by statute; and G.S. 90-95(h)(3)a and G.S. 90-95(i) provide that a person convicted of trafficking or conspiracy to traffic in cocaine in an amount between 28 and 200 grams, as happened here, "*shall* be sentenced to a term of at least seven years." (Emphasis added.)

No error.

Judges WELLS and WHICHARD concur.