STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

STATE OF NORTH CAROLINA v. DAVID CRUMMY, WILLIAM THOMAS
McGHEE AND BERDO I. PIERCE

No. 915SC716

(Filed 1 September 1992)

1. **Jury § 5 (NCI3d) — venirepersons — ex parte communications — excused from service — no error**

    There was no error in a narcotics prosecution where venirepersons were excused from jury service after *ex parte* communications with court personnel where the judge expressed concern that those who had been added to the venire would not have sufficient time to get their affairs in order. The substance of what transpired was subsequently placed on the record and defendant was given the opportunity to be heard.

    **Am Jur 2d, Jury §§ 267, 269.**

2. **Criminal Law § 476 (NCI4th) — jury selection — deputies' conversation overheard — special venire denied — no error**

    The trial court did not err in a narcotics prosecution by denying defendants' motion for a special venire or by failing to inquire into possible jury taint where a prospective juror reported to the court that she had overheard a hallway conversation between courtroom deputies which she felt was intimidating. That juror was peremptorily excused and stated that she did not discuss the conversation with anyone, defendants proffered no evidence to show that any impanelled juror overheard the conversation or was prejudiced or intimidated thereby, no juror approached the court with information that he or she had overheard these remarks or otherwise been threatened or intimidated, and each repeatedly answered that he or she could be fair and impartial.

    **Am Jur 2d, Jury §§ 267, 269.**

3. **Criminal Law § 912 (NCI4th) — jury poll — juror response — no error**

    There was no error in a narcotics prosecution where the defendants contended that a juror failed to confirm her verdict when polled in that her response was almost inaudible and that she appeared reluctant and required assistance by other members of the jury in standing and answering questions,

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

but the record shows the juror affirmed her verdict by answering yes to each question during polling and there was no evidence that she was intimidated by other members of the jury when reaching her verdict or that she did not freely assent to the verdict.

Am Jur 2d, Trial §§ 1766, 1770.

Juror's reluctant, equivocal, or conditional assent to verdict, on polling, as ground for mistrial or new trial in criminal case. 25 ALR3d 1149.

4. Criminal Law § 380 (NCI4th) — objections by defense counsel — admonishment by judge — no abuse of discretion

The trial court did not abuse its discretion in a narcotics prosecution where the court granted defense counsel a continuing objection to a line of questioning, reiterated that point several times, then, when counsel continued to object on the same grounds, commented in the presence of the jury that defense counsel was interrupting and diverting the jury's attention and admonished defense counsel outside the presence of the jury. Defendants failed to show that they were prejudiced by the comments in the presence of the jury or the admonitions outside the presence of the jury, although the Court of Appeals disapproved of the language used by the court in the admonitions and found it unjustifiable under the circumstances. There is nothing in the record to indicate that counsel was intimidated, ineffective, or otherwise unable to adequately represent defendants as a result of the remarks.

Am Jur 2d, Trial §§ 709, 713.

5. Criminal Law § 475 (NCI4th) — narcotics — receipt of extraneous information by juror during deliberations — no evidentiary hearing — no error

The trial court did not abuse its discretion in a narcotics prosecution by not holding an evidentiary hearing where a juror told a court official and a news reporter after the trial that she had heard about a shooting incident which occurred during deliberations, that she was not sure whether the incident involved one of the defendants or his brother, that she was intimidated by the report of the shooting, and there was evidence that the juror had spoken with one of the State's

witnesses by telephone during deliberations. By her own admission, the report of the shooting incident did not influence the juror's deliberations, she unequivocally reaffirmed her verdict when polled, and the court made plenary findings of fact and clearly stated the applicable law.

**Am Jur 2d, Trial §§ 1608, 1612.**

6. **Jury § 7.14 (NCI3d) — narcotics — peremptory challenges — not racially motivated**

The trial court did not err in a narcotics prosecution by finding that the prosecutor's peremptory challenges were not racially motivated where the State's showing of criminal history, knowledge of the defendant or a member of defendant's family, inability to understand legal rules, and a history of unemployment were sufficient to rebut any showing of a *prima facie* case under *Batson*.

**Am Jur 2d, Jury §§ 267, 271, 284.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

7. **Jury § 7.6 (NCI3d) — narcotics — challenges for cause — no opportunity to rehabilitate jurors — no error**

The trial court did not err in a narcotics prosecution by refusing to allow defendants to ask rehabilitative questions to jurors excused for cause after stating that they could not be fair and impartial. The jurors were excused for cause on sufficient grounds and defendants made no showing that further questioning would likely have produced different answers.

**Am Jur 2d, Jury §§ 201, 221, 222.**

8. **Narcotics § 4 (NCI3d) — trafficking in cocaine — amount and identity of controlled substance — evidence sufficient**

There was sufficient evidence in a prosecution for trafficking in cocaine as to the amount and identity of the controlled substance where there was no stipulation and no physical evidence, and the only evidence of the weight and nature of the substance was the uncorroborated testimony of persons involved in the conspiracy who were testifying under agreement with the State.

**Am Jur 2d, Evidence §§ 1153, 1155, 1156.**

9. **Grand Jury § 17 (NCI4th)— grand jury documents—motion to disclose refused—no error**

The trial court did not err in a narcotics prosecution by refusing to allow defendants to inspect investigative grand jury documents where defendants contended that the documents were necessary to determine whether each grand juror heard all of the evidence and concurred in the decision to return the indictment, and that the trial court erred by ruling that such information could not be disclosed as a matter of law when the court could have exercised its discretion under N.C.G.S. § 15A-623(h). However, N.C.G.S. § 15A-622(h), which specifically states that the contents of the petition and affidavit shall not be disclosed, is more specific and pertinent to the facts of this case and is the controlling statute. Moreover, there is no indication in the record that the court reached the conclusion that defendants were not entitled to the documents under the mistaken conclusion that it was required to so hold as a matter of law.

**Am Jur 2d, Grand Jury § 39.**

**Accused's right to inspection of minutes of state grand jury. 20 ALR3d 7.**

10. **Criminal Law § 448 (NCI4th)— narcotics trafficking—argument concerning presence of children—not prejudicial**

The argument of a prosecutor in a narcotics prosecution that children had been present and could smell the odor when defendants cooked cocaine into crack was a reasonable inference from the evidence and was not so grossly improper as to require intervention *ex mero motu*.

**Am Jur 2d, Trial § 632.**

11. **Criminal Law § 76 (NCI4th)— narcotics—change of venue for pretrial publicity—denied**

The trial court did not abuse its discretion by denying defendants' motion for a change of venue or a special venire due to pretrial publicity in a narcotics prosecution where defendants made no showing that the pretrial publicity was so pervasive and inflammatory that it was reasonably likely that they could not receive a fair trial.

**Am Jur 2d, Venue §§ 378, 389.**

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

Pretrial publicity in criminal case as ground for change of venue. 33 ALR3d 17.

12. Criminal Law § 923 (NCI4th)— verdict—guilty of trafficking by transportation—instruction on trafficking by possession—lapsus linguae

There was no error in a narcotics prosecution in accepting a verdict of guilty of trafficking in cocaine by transportation even though the instructions referred to trafficking in cocaine by possession where the court grouped the charges and instructed on trafficking in cocaine by possession as it related to each defendant, then instructed on trafficking by manufacturing and then on trafficking by transportation, and it is clear from the transcript that the court simply mistakenly used the word "possession" in one instance when it meant "transportation"; the court advised the jury at the end of the instruction that the charge was trafficking by transportation; and the verdict sheet recited the charge as trafficking by transportation. Moreover, defense counsel did not timely object and may not object on appeal.

Am Jur 2d, Trial §§ 1126, 1127, 1138.

13. Criminal Law § 321 (NCI4th)— cocaine trafficking—joinder—no error

The trial court did not abuse its discretion by denying defendant Pierce's motion to sever where three defendants were charged with several cocaine trafficking offenses. The multiple charges of trafficking in cocaine through possession, manufacturing, and transportation, and conspiracy are within the purview of N.C.G.S. § 15A-926(b)(2)b. Moreover, defendant Pierce has failed to satisfy his burden of showing that he was deprived of a fair trial and prejudiced as a result of the joinder.

Am Jur 2d, Trial § 158.

Right of defendants in prosecution for criminal conspiracy to separate trials. 82 ALR3d 366.

APPEAL by defendants from judgments entered 12 April 1990 by *Judge Henry L. Stevens, III* in NEW HANOVER County Superior Court. Heard in the Court of Appeals 15 July 1992.

The State's witness Chris Moore testified that he began selling cocaine for defendant Crummy in the spring of 1987 under an agreement that he would keep $5 from every sale of ¼ gram of cocaine at $25, and would profit $10 from a sale of ½ gram at $50. At one point, however, Crummy told Moore he could give the proceeds from the sales to defendant McGhee, which Moore estimated he did approximately twenty times. Per this relationship, Moore went with Crummy to New York to purchase drugs in June or July, August, September, and October 1987. The October trip, which was similar to previous trips, was depicted as follows:

Prior to leaving town, Moore saw approximately $40,000 wrapped in $1,000 stacks in Crummy's room. Moore, Crummy, and Keith Richardson counted the money and put it inside Crummy's tote bag. They picked up Lionel Boney and James Thomas and left for New York in Crummy's brother's car.

Upon reaching New York the men went to Paulette Tyson's apartment. Moore, Crummy and Boney then took the money to a nearby store operated by a man named Jose. Moore, Crummy and Jose went into the back room and Crummy told Jose he wanted one and one-half kilograms. Jose gave them what appeared to be one and one-half kilograms of cocaine but he only weighed out one-half of a kilogram. Thereafter, Crummy gave money to purchase bus tickets to Moore and Boney, who carried the cocaine from New York to Washington, D.C. Crummy and Thomas drove the car and the four men met in Washington, D.C. and drove back to Wilmington together.

Moore stated that upon returning to Wilmington, Crummy, Moore, defendant Pierce, Abraham Levine, Tom Richardson, Leonard Hawes, and Keith Richardson went to Bridgette Richardson's house to cook the cocaine. Crummy and Levine cooked the cocaine while the others tore aluminum foil and cut plastic bags. The cooked crack was wrapped in the foil and the powder cocaine was placed in plastic bags. The cocaine was packaged in fifty bags of ½ grams of cocaine powder and fifty bags of ½ grams of crack.

Moore testified to other trips including one in November 1987 in which he went to New York with George Porter, James Murphy, defendant McGhee and his wife, Elizabeth McGhee in McGhee's car without Crummy. McGhee put approximately $48,000 in Moore's bag which was put in the trunk of the car. Once in New York, Moore exchanged $42,000 for two kilograms of cocaine with Jose.

Moore, Murphy, and Porter then took the drugs to Fayetteville by bus, where they were met by Crummy. Upon arrival in Wilmington, Crummy, Moore, and Richardson went to Bridgette Richardson's house and cooked half of the cocaine.

Moore further testified that Pierce was on one of the trips at either the end of November or the beginning of December and that he was present at the cooking session at the end of the November trip. Evidence was offered concerning a similar trip to New York in December 1987 in which Moore, Crummy, and Pierce participated and where Crummy bought two kilograms of cocaine. In early January 1988 Crummy, Moore, Moore's wife, and Connie Devane went to Alexandria, Virginia where Crummy and Moore again bought two kilograms of cocaine from Jose for $42,000. Upon returning to Wilmington the drugs were cooked with Pierce's help at Anita Richardson's apartment and then distributed. Moore stated that similar trips to Alexandria were taken at the end of January, twice in February, and in March. Following the January and March trips the cocaine was cooked at Janet Parker's apartment. Additional trips to New York were taken in March and May 1988.

In June 1988 Moore, Crummy's wife, and Stephanie Bridges went to New York at Crummy's request. Airline tickets were purchased for the three of them with Crummy's money. Once in New York, Moore called Crummy from Paulette Tyson's apartment to tell him they had arrived. Moore and Paulette bought two kilograms of cocaine for $42,000 from Jose and then went back to Paulette's apartment. Crummy instructed Moore to return with the cocaine so he and Bridges took a bus the next day. Crummy and others picked Moore and Bridges up in Fayetteville and drove them back to Wilmington. Upon returning to Wilmington, Moore, Crummy, Keith Richardson and others went to Junior Keaton's apartment to cook the cocaine. There was substantial other evidence at trial from a total of twenty-three witnesses aside from law enforcement officers, including the testimony of named participants, which corroborated Moore's testimony.

At trial, defendant McGhee was charged with one count of conspiracy to traffic in cocaine of 400 grams or more and trafficking in cocaine by possession. Defendant Pierce was charged with one count of conspiracy to traffic in cocaine of 400 grams or more and twenty-one counts of trafficking in cocaine by possession, manufacture and transportation. Defendant Crummy was charged

with one count of conspiracy to traffic in cocaine of 400 grams or more and fifty-two counts of trafficking in cocaine by possession, manufacture and transportation. The three defendants pled not guilty and the cases were joined for trial.

McGhee was convicted of conspiracy to traffic in cocaine of 400 grams or more and received a thirty-five year sentence and a $250,000 fine. Pierce was found guilty of trafficking in cocaine by transportation and guilty of conspiracy to traffic in cocaine of 400 grams or more. He received two consecutive thirty-five year sentences and was fined $500,000. The jury convicted Crummy of conspiracy to traffic in cocaine, two counts of trafficking by possession, two counts of trafficking by manufacture, and three counts of trafficking by transportation. He was sentenced to eight consecutive terms of thirty-five years each and fined $2,000,000. A fourth defendant, Abraham Levine, was found not guilty of conspiracy to traffic in 400 grams or more of cocaine, trafficking in cocaine by possession, and trafficking in cocaine by manufacturing.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Nora Henry Hargrove for defendant appellants.*

WALKER, Judge.

Defendants bring forth twelve assignments of error for this Court to consider on appeal. Defendant Pierce proffers two additional objections. In light of the magnitude and complex nature of this case, we find it prudent to address each contention separately.

I

[1] Defendants first argue the trial court erred when it excused venirepersons on the basis of *ex parte* communications. The trial court instructed the Jury Intake Officer and Deputy Clerk that they were to discuss with the venirepersons any problems they may have in sitting on the jury. The Jury Intake Officer and Deputy Clerk were then to use their discretion and to dismiss any prospective juror if appropriate. Subsequently, a college student, a teacher, and two other persons were excused. Although the teacher was black neither the Officer nor the Clerk could recall the race of the other venirepersons who were excused. The trial court found that neither the State nor the defendants had any vested interest in these prospective jurors.

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

The court indicated to counsel that the motivation for the delegation of this responsibility was to help those experiencing hardship who had recently been added to the venire and was not to discriminate against any jurors because of their race. The court expressed concern that those persons being added to the venire would not have sufficient time to get their affairs in order, since the order under which they were subpoenaed to appear was signed only two weeks earlier. In this regard the court found that:

> [I]nasmuch as the Court commutes some 65 miles away he left the Jury Intake Officer and the Clerk with the responsibility to relieve pressures created by emergencies if in the opinion of the Clerk and Intake Officer that it was an emergency or could work a hardship for these people, as they had little or no notice and the Court wanting to do the humane thing, wanting to give latitude in that respect, treating everybody alike whether they were black, yellow, red or white or whatever and that's the way it was done and that there is no showing here that there was any knowledge or indication or desire by anyone to excuse anybody because of race or sex or whatever, but only to help those people that expressed a hardship and the Court's desire to be humane and help them with their own problem and let them go back to their own business or whatever rather than having to sit here in this jury.

Defendants contend that these actions by the trial court deprived them of their right to be present at every stage of the proceeding as guaranteed by Article I, Section 23 of the North Carolina Constitution and the Sixth Amendment of the United States Constitution. *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990). Defendants argue they were also denied the Sixth Amendment right to the assistance of counsel in criminal prosecutions because venirepersons were questioned and excused outside the presence of counsel. Furthermore, defendants submit that the trial court's actions violated G.S. 9-15(a) which provides in part that:

> The court, and any party to an action, or his counsel of record shall be allowed, in selecting the jury, to make direct oral inquiry of any prospective juror as to the fitness and competency of any person to serve as a juror.

"Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, . . . where the appellate court can declare a

belief that it was harmless beyond a reasonable doubt." *State v. Taylor*, 280 N.C. 273, 280, 185 S.E.2d 677, 682 (1972); *State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987); *See also* G.S. 15A-1443. Thus far, whether or not such *ex parte* examinations of venirepersons constitutes prejudicial error has been addressed by our Supreme Court primarily in capital cases, which defendants now rely upon for support. In *State v. Cole*, 331 N.C. 272, 415 S.E.2d 716 (1992), however, the Court addressed this question where the defendant was charged with first-degree murder and second-degree murder.

The pertinent facts of *Cole* indicated that a jury panel was present for the trial of cases during the week commencing 17 July 1989. Before selecting a grand jury and a grand jury foreman, the court considered excuses from prospective jurors by questioning them individually at the bench and off the record. Neither the defendant nor his attorney was present at the bench. The record did not reflect the contents of these discussions but indicates the court said, "I've excused those or deferred those that seemed appropriate." Subsequently, on Tuesday, 19 July 1989, the defendant's case was called for trial and jury selection began. The following day a second pool of prospective jurors reported for duty and were questioned individually at the bench concerning requests to be excused or deferred from service. Neither the defendant nor his counsel was present at the bench during these conferences and the record does not reveal the substantive nature of these discussions. As a result, however, the court excused some of these prospective jurors.

The Court held it was not error for the court to excuse prospective jurors following the unrecorded bench conferences on 17 July 1989 because the defendant's trial had not commenced at that time. "The jurors were not excused at a stage of the defendant's trial and the defendant did not have the right to be present at the conferences." *Id.* at 275, 415 S.E.2d at 717. On the contrary, it was error to excuse prospective jurors pursuant to the unrecorded bench conferences on 19 July 1989 because "[t]he defendant's trial had commenced at that time and he had an unwaivable right to be present at all stages of the trial." *Id.* We note that in the instant case defendants have not established whether the prospective jurors were excused before or after the commencement of defendants' trial. Additionally, we note that the trial court in *Cole* failed to disclose on the record the substance of the bench conversations regarding why the prospective jurors were excused.

In the recent case *State v. Johnston*, 331 N.C. 680, 417 S.E.2d 228 (1992) our Supreme Court held that a new trial was warranted where numerous prospective jurors were excused after private unrecorded bench conferences in a capital case. The Court asserted that the State had failed to satisfy its burden of showing that the exclusion of these defendants from the private conversations was "harmless beyond a reasonable doubt." Without determining the applicability of this burden of proof in the case before us, we conclude that *Johnston* is not dispositive.

In rendering its decision, the *Johnston* Court noted that the record was devoid of evidence as to why the prospective jurors were excused. The Court also stated that it was unable to ascertain whether the errors were harmless beyond a reasonable doubt because the record failed to reveal the substantive nature of these conversations. On the contrary, in the instant case the Jury Intake Officer and the Clerk stated that the reasons for excusing venirepersons were hardship or health, and the court reconstructed these events, placed them on the record, and stated its approval. Upon inquiry by the court, the Jury Intake Officer narrated the sequence of events involving the excusal of prospective jurors, and the Clerk corroborated these statements by way of response to questions from the court and the prosecutor. Although defendants offered a broad objection to the procedure followed with respect to the excusing of these prospective jurors, they voiced no objections regarding the inquiry of the Jury Intake Officer and the Clerk, declined the opportunity to further examine the Clerk, and turned down the court's offer "to be heard in any manner whatsoever." In this regard we find *State v. Ali*, 329 N.C. 394, 407 S.E.2d 183 (1991) to be instructive. Here, as in *Ali*, the substance of what transpired was subsequently placed on the record and the defendant was given the opportunity to be heard. Following the rationale and holding of *Ali*, we cannot conclude that defendants in the instant case were prejudiced by the trial court's actions and overrule this assignment of error.

II

[2] Defendants argue the trial court erred in failing to inquire about possible jury taint resulting from a conversation of the courtroom deputies and in failing to grant defendants' motion for a special venire. There was evidence that during jury selection a previously passed juror appeared in court with her attorney and

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

reported the following sequence of events: After having been called as a juror and having received the first preliminary instructions from the court not to discuss the case with anyone, the juror overheard some courtroom deputies in the hall talking to each other about the case. The juror said the deputies mentioned something about the bullet proof vest being hot and that the judge's life had been threatened. One of the deputies stated, "I would like to see one of them pull my gun." It was the juror's impression that the deputies did not appreciate the need for extra security caused by the character of the four defendants, who were described as "scudbags" or the like. Later the juror heard another deputy say he was upset with some woman and that he knew where she worked. He also stated that he was going to follow her home from work and write her as many tickets as possible and that she "better not have a dirty license tag."

The juror said that she did not know if any of the other jurors overheard these conversations but that she was the first person in a line to go back into the courtroom and the deputies were approximately three feet from her when they made the comments. The juror stated that she was unable to disregard the statements and felt so intimidated by them that it would have been almost impossible for her to have been an impartial juror. She never mentioned the conversations to any other jurors.

Defendants contend the trial court erred in failing to inquire as to whether any of the other jurors overheard the deputies' remarks and in failing to grant their motions for severance and change of venue and for a special venire. We disagree. The juror who overheard the deputies' comments was peremptorily excused and did not serve as a juror. She stated that she did not discuss what she had heard with anyone. Defendants have proffered no evidence to show that any impanelled juror overheard the conversation or was prejudiced or intimidated thereby. No juror approached the court with information that he or she had overheard these remarks or otherwise felt threatened or intimidated and each repeatedly answered that he or she could be fair and impartial.

A ruling on a motion for a new trial based upon misconduct affecting a jury's deliberation is within the sound discretion of the trial court and it will not be disturbed on appeal unless the ruling is clearly erroneous or a manifest abuse of discretion. *State v. Bailey*, 307 N.C. 110, 296 S.E.2d 287 (1982); *State v. Johnson*,

295 N.C. 227, 244 S.E.2d 391 (1978). In light of the facts and circumstances surrounding this sequence of events, we cannot conclude the trial court erred in failing to conduct further inquiry into the matter or in failing to grant defendants' motions for special venire or severance and change of venue. This assignment of error is overruled.

## III

[3] Defendants' third assignment of error asserts that defendants were denied the right to a unanimous jury verdict because Juror Bowden failed to confirm her verdict when polled. They contend that Juror Bowden's verdict was almost inaudible and that she appeared reluctant and required assistance by other members of the jury in standing and answering the questions. Defendants thereby argue the trial court erred in refusing to inquire further of Juror Bowden's verdict and in failing to grant defendants' motion to impeach the verdict.

The record shows that Juror Bowden affirmed her verdict by answering "Yes" to each question posed to her concerning her verdict during the polling of the jury. There was no evidence that she was intimidated by other members of the jury when reaching her verdict or that she did not freely assent to her verdict. Thus, this assignment of error is without merit.

## IV and V

[4] Defendants profess the trial court impermissibly expressed an opinion when it admonished defense counsel in the presence of the jury and that it deprived defendants of effective representation of counsel and due process when it threatened counsel with disciplinary and contempt proceedings if there were continued objections. During the direct examination of the State's witness Chris Moore, defense counsel objected to a question asked of the witness on the grounds that it was leading. The court replied, "Objection is overruled. Under Rule 611, Counselor, I am going to permit the State as well as counsel on cross-examination, whatever it is, to develope [sic] the subject of the testimony." However, defense counsel immediately objected to the next question on the same grounds. The court then stated, "I will give you a continuing objection but you are interrupting now. It diverts the jury's attention. I will give you a continuing objection, sir." Defense counsel failed to heed the trial court's admonition and continued to object to

the questioning on the grounds that it was leading. At that point the trial court stated, "Objection is overruled on the same ground, Counselor. I have already told you about it now. I have given you a continuing objection." When defense counsel again objected the trial court asked counsel if he wished to be heard, to which counsel responded affirmatively. Subsequently, the jury was excused and counsel was allowed to argue his objections to the manner of questioning. After hearing arguments from both sides, the court commented outside the presence of the jury:

> Now, firstly, I don't hink [sic] the questions; that he is leading him. As a matter of fact, I am certain in my mind that they are not and I have ruled on that, Counselor and, but to protect your interest I have given you a continuing objection to these things and I have ruled and I am running this court and I will continue to run it and if I need any help from anybody then I will ask for it, but don't anybody dare to encrouch [sic] upon my territory. If you do I am going to tell you at the outset somebody is going to get hurt. That means that a law license could be in jeopardy and their backside could be in jail; so I make no threats; I make no comments; I am just telling all of you—I know you are under a lot of pressure, but watch it.

Defendants submit that the court's statements in the presence of the jury belittled counsel and expressed an opinion that counsel was interrupting the court's business, which affected counsel's credibility with the jury. Defendants correctly note that it is impermissible for a judge to express an opinion, either explicitly or implicitly, at any time during the course of the trial. G.S. 15A-1222. *See also State v. Staley*, 292 N.C. 160, 232 S.E.2d 680 (1977). We do not conclude the court's remarks constituted prejudicial error necessitating a new trial, however. G.S. Sec. 8C-1, Rule 611(a) gives the trial court discretion with regard to the examination of witnesses. In this case the court granted defense counsel a continuing objection to the line of questioning, and reiterated this point several times, but counsel continued to object on the same grounds. We cannot determine that the trial court abused its discretion in this regard and defendants have failed to show that they were prejudiced thereby. *See State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988).

We find this case to be distinguishable from *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1971), which is relied upon by defend-

ants. In *Lynch* the Supreme Court found prejudicial error where the trial court gave a blanket instruction to the court reporter to overrule any objection made by defendant's counsel. This action implied there was no possible merit to *any* objection by counsel. In the instant case the trial court admonished counsel with respect to objections made on the *single ground* that the questions were leading because counsel had already been given a continuing objection in this regard. Moreover, counsel was allowed to be heard on his objections outside the presence of the jury, whereas in *Lynch* the court never gave counsel the opportunity to be heard and never ruled on his objections.

Defendants also assign as error the court's admonitions to counsel outside the presence of the jury, which they argue had a chilling effect and diminished their right to effective representation of counsel. Although we disapprove of this language by the court and find it to be unjustifiable under the circumstances, defendants have failed to show that they were prejudiced by the comments. The court's reprimand occurred outside the presence of the jury and the record indicates the case was vigorously tried. Defendants' counsel continued to make objections and argue evidentiary matters. There is nothing in the record to indicate that counsel was intimidated, ineffective, or otherwise unable to adequately represent defendants as a result of the remarks.

## VI

[5] Defendants next contend that the trial court erred in not holding an evidentiary hearing to determine if Juror Bowden received extraneous information during jury deliberations. Approximately ten or twelve days after the trial had concluded, Juror Bowden told a court official and a news reporter that she had heard about a shooting incident which occurred during the jury's deliberations, but she was not sure whether it involved defendant Crummy or his brother. The juror stated she was intimidated by the report of the shooting. There was also evidence that Juror Bowden spoke with one of the State's witnesses by telephone during her deliberations. Counsel subsequently made a Motion for Appropriate Relief and asked for an evidentiary hearing to determine the validity of these allegations, which was denied.

The court, in its order denying the Motion for Appropriate Relief, found:

3. That the alleged remarks made by the former juror to the newspaper were made in an interview at the juror's home after she had been discharged from jury duty for almost two weeks and returned to her community in a locale frequented by co-defendants where, under the existing circumstance, intimidation, coercion, reward or threat is a possibility. That such remarks made to the newspaper, or to a bailiff by the juror, were not sworn statements but are lacking in credibility [and] were inconsistent with her sworn statement as a juror at the time of poll in open court to the clerk.

4. That the verdict itself belies intimidation as each count was returned and considered separately and considered by the jury, in that, three of the defendants were found guilty and not guilty on separate charges and [the] fourth defendant completely exonerated, the Court finds and concludes that these jurors carefully considered each charge against each defendant for more than 20 hours before deciding upon and returning a truthful verdict as it found the facts to be from the evidence and the law given them by the court.

After reciting the relevant statutes and case law on this issue the court concluded:

4. That the statements allegedly made by the former juror, Mrs. Mary Bowden to a bailiff or to the newspaper are as a matter of law insufficient to overturn the verdict in these cases, or had no effect on her deliberations as a juror nor upon her decision-making process as indicated by her in the press release. The remarks of Mrs. Bowden as to extraneous information are not prejudicial either in fact or in law.

As defendants correctly point out in their briefs, the trial court's determination on the question of juror misconduct will be reversed only where there is an abuse of discretion. *State v. Bailey, supra.* The trial court is in a better position to investigate any allegations of misconduct, question witnesses and make appropriate findings. *State v. Drake,* 31 N.C.App. 187, 229 S.E.2d 51 (1976). In the case before us the trial court made plenary findings of fact and clearly stated the applicable law. By her own admission the report of the shooting incident did not influence her deliberations and she unequivocally reaffirmed her verdict when polled. Consequently, we cannot conclude that the trial court abused its discretion in denying the motion and therefore overrule this assign-

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

ment of error. We agree with the trial court that no evidentiary hearing was necessary as the allegations only presented a question of law.

## VII

**[6]** Defendants argue the trial court erred in finding the prosecutor's peremptory excusals were not racially motivated. Specifically, they contend that during jury *voir dire* the prosecutor violated the mandate of *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69 (1986) by using his peremptory challenges in a way that discriminated against five potential black jurors and the black defendants. The trial court found that defendants had not made a *prima facie* case, pursuant to *Batson*, that the prosecutor's peremptory challenges were not racially motivated. Alternatively, the court stated that even if a *prima facie* showing were made, the State successfully rebutted it through its articulation of racially neutral criteria for selection.

The State explained that Juror Vaught was unemployed and had a worthless check conviction. Juror Franks indicated that she had known and worked with defendant Crummy's aunt for the past fifteen years and that she knew four of the State's witnesses. Her brother had been convicted of drug violations in the past year. Additionally, she felt the State's burden of proof was beyond *all* doubt. Juror Brown also felt the State's burden of proof was beyond all doubt. Juror Williams knew two of the State's witnesses and defendant Pierce's sister. He believed drugs should be an individual choice and had been convicted of driving without a license. He also believed the State's burden of proof was beyond all doubt. Juror Hatcher indicated that he had known a member of defendant McGhee's family for two or three years and had talked to or had some other contact with him within the last month. He has a relative who has used cocaine but he has not admonished that relative in this regard.

Defendants also submit that the criteria enunciated by the prosecutor were disparately applied to excuse black jurors. They assert that the prosecutor passed other jurors who misunderstood the State's burden of proof and who believed the use of narcotics was an individual choice. One juror was also a separated mother of three children, one of whom was seriously ill, and would not be paid while serving as a juror. In making this argument we find that:

> Defendant[s'] approach . . . involves finding a single factor among the several articulated by the prosecutor as to each challenged prospective juror and matching it to a passed juror who exhibited that same factor. This approach fails to address the factors as a totality which when considered together provide an image of a juror considered in the case undesirable by the State.

*State v. Porter*, 326 N.C. 489, 501, 391 S.E.2d 144, 152-153 (1990).

Without addressing the question of whether defendants established a *prima facie* case under *Batson*, we hold that the State's showing was sufficient to rebut it. Our Supreme Court noted in *Porter* that a juror's criminal history is a sufficiently racially neutral reason to challenge him, and that other neutral grounds for excusing a juror include the juror's knowledge of the defendant or a member of defendant's family, the juror's inability to understand legal rules, and a juror's history of unemployment. Deference must be afforded the trial court in a *Batson* challenge. Thus, we cannot conclude the trial court in the instant case erred or abused its discretion in finding the peremptory challenges were not racially motivated, and we overrule this assignment of error.

### VIII

[7] Defendants further complain that the trial court erred in refusing to allow defendants to pose rehabilitative questions to four jurors who were excused for cause after stating they could not be fair and impartial. Defendants argue they should have been allowed to question the jurors as to whether or not they could set aside their personal feelings and render a decision based on the evidence as it was their position that the prosecutor was systematically excluding blacks.

Juror Myers stated that she learned of the case through television and newspapers. She had discussed the case with her neighbors and admitted to having "a lot of opinions" about the case. She also acknowledged that she had formed or expressed an opinion as to the guilt or innocence of the defendants. Juror Waddell stated he could not be fair and impartial because he had known the defendants for years, even though he had never spoken with them. Juror Davis said he had known defendant Crummy's uncle for approximately thirty-five years and that he did not think he could be fair and impartial. Additionally, Juror Hamby stated that she had

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

known two witnesses for the State most of her life and that she did not feel she could be fair and impartial.

Defendants rely upon *Irvin v. Dowd*, 366 U.S. 717, 6 L.Ed.2d 751 (1961) and *State v. Corbett*, 309 N.C. 382, 307 S.E.2d 139 (1983) as support for their argument that "[t]he mere existence, without more, of a preconceived notion as to the guilt or innocence of an accused, is insufficient to rebut the presumption of a prospective juror's impartiality, [and] [i]t is sufficient if a juror can lay aside the impression or opinion and render a verdict based on the evidence presented in court." G.S. 15A-1212 provides, however, that a challenge for cause is proper if the juror:

> (6) Has formed or expressed an opinion as to the guilt or innocence of the defendant.
>
> . . . .
>
> (9) For any other cause is unable to render a fair and impartial verdict.

We conclude these prospective jurors were thereby excused for cause on sufficient grounds.

Our Supreme Court has found no error in capital cases where the trial court refused to allow defendant an opportunity to rehabilitate witnesses excused for cause. *See State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987); *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909 (1989). It has stated:

> When challenges for cause are supported by prospective jurors' answers to questions propounded by the prosecutor and by the court, the court does not abuse its discretion, at least in the absence of a showing that further questioning by defendant would likely have produced different answers, by refusing to allow the defendant to question the juror challenged.

*State v. Reese* at 120-121, 353 S.E.2d at 358, *quoting State v. Oliver*, 302 N.C. 28, 274 S.E.2d 183 (1981). Although the case before us is non-capital, we find the foregoing rule to be applicable. Thus, the trial court did not err in denying defendants' requests to rehabilitate the challenged jurors because defendants have made no showing that further questioning would likely have produced different answers and the challenges were supported by the jurors' answers.

IX

[8] Pursuant to G.S. 90-95(h)(3)(c) defendants were charged with trafficking in cocaine of 400 grams or more. They contend the evidence was insufficient as to the amount and identity of the controlled substance because the only evidence of the weights and nature of the substance was the uncorroborated testimony of persons involved in the conspiracy, who were testifying under agreement with the State and would receive a lesser sentence in exchange for their testimony. There was no stipulation and no physical evidence so defendants were unable to examine and confront the substance.

In *State v. Norman*, 76 N.C.App. 623, 334 S.E.2d 247, *disc. review denied*, 315 N.C. 188, 337 S.E.2d 863 (1985), this Court found there was sufficient evidence to establish a conspiracy to violate G.S. 90-95(h)(3)(c) even though no physical evidence was seized. Evidence that defendant told a third party that she knew a source who could supply him with a kilo of cocaine and that the third party and defendant "arrived" at a price of $55,000 for a kilo was sufficient to support defendant's conviction under the statute.

In the instant case, Lionel Boney testified to having seen defendant Crummy with a gym bag containing two kilograms of cocaine during a trip to New York in October 1987. He described the cocaine as being in a block approximately twelve inches long and four inches wide. Katy Shannon stated that she had accompanied defendant Crummy to New York in 1987 and had seen him with some cocaine and used her hands to relate its physical size to the jury. Connie Devane testified that she saw defendant Crummy and Chris Moore with a grocery bag containing a great deal of money in stacks bound by rubber bands while with them at the Hampton Inn in Alexandria, Virginia. She claimed she later saw a white substance believed to be cocaine in a bag described as being the height of a piece of paper. Additionally, Keith Richardson testified to cooking cocaine in the presence of defendant Crummy and Chris Moore and described it as being in a block approximately four or five inches long, two inches wide and two inches high. We conclude that this testimony as to the weight and the nature of the substance is sufficient to support a conviction under G.S. 90-95(h)(3)(c) as to all defendants, even absent physical evidence. This assignment of error is overruled.

## STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

## X

[9]  Further error is assigned to the trial court's refusal to allow defendants to inspect the investigative grand jury documents on the grounds it violates defendants' right to due process, right to present a defense and right of confrontation. We address this contention without deciding whether defendant Pierce would be barred from making this argument under N.C. Rules of Appellate Procedure, Rule 10(b)(1).

Prior to trial defendants made a motion to quash the indictments on the grounds the grand jury operated outside its scope and indicted defendants without hearing all the evidence, and the prosecutor was guilty of misconduct. Defendants also requested a copy of the affidavit and petition filed by the District Attorney requesting the convening of the investigative grand jury. Following a hearing, the trial court denied the motion to quash and denied defendants copies of the affidavit and petition. Among its findings of fact the court found:

8. That the Defendants offered no evidence or legal arguments to support their demand for Investigative Grand Jury Petitions, Affidavits, Transcripts, Subpoenas and other documents; that the Court finds as a fact that the State has in the interest of Justice provided Defendants all Investigative Grand Jury testimony and under the provisions of North Carolina General Statute 15A-622(h) and 15A-623(h) the information Defendants seek cannot be disclosed.

The court also concluded that defendants were not entitled to the Investigative Grand Jury documents as a matter of law.

Defendants submit the documents are necessary in order to determine whether each of the grand jurors heard all of the evidence and then concurred in the decision to return an indictment. They contend the papers will verify the legal sufficiency of the grand jury proceedings and should be released since there is no longer a need for secrecy. Furthermore, defendants argue that G.S. 15A-623(h) allows the trial court, in its discretion, to disclose grand jury proceedings where it is deemed essential to protect defendants' constitutional rights. Here, however, they contend the court ruled that such information could not be disclosed as a matter of law when in fact the court could have chosen to exercise its discretion, and that such a mistaken ruling constitutes reversible

error. *Lemons v. Old Hickory Council, Boy Scouts of America, Inc.*, 322 N.C. 271, 367 S.E.2d 655, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988); *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987). We cannot agree.

G.S. 15A-622(h) specifically states, "The contents of the petition and the affidavit shall not be disclosed." Insofar as it is more specific and pertinent to the facts of this case, we find it to be the controlling statute. G.S. 15A-623(h) is not relevant because defendants have not argued an intent to use these documents to impeach a witness's testimony nor shown such disclosure to be essential in order to protect their constitutional rights.

Moreover, we do not find *Lemons* to be dispositive in the instant case. There, the trial court mistakenly concluded it was without authority to extend the time for service of the alias summons and therefore denied plaintiff's motion. The Supreme Court reversed on the ground that the trial court rendered its decision under the mistaken impression that it was required to do so as a matter of law, when in fact it had discretion. In the case before us, however, the trial court made findings in support of its conclusion that defendants were not entitled to the documents. Although the court concluded that defendants were not entitled to the documents as a matter of law, there is no indication in the record that the court reached this conclusion under the mistaken belief that it was required to so hold as a matter of law. Thus, for the foregoing reasons this assignment of error is overruled.

XI

[10] Defendants also assign as error the trial court's failure to strike *ex mero motu* the prosecutor's closing argument to the jury on the ground that it was improper. The district attorney argued:

> You remember when they [defendants] said they went to Bridgette's house to cook up. Remember what Boorock said. He said, "My little nephew was there." Do you remember when they were at Janice [sic] Parker's house to cook up? "My three year old son was there." You remember when they went to Nickie's house. Nickie's children were there. David Crummy had a house with kids. Why didn't he go to his own house and cook up? Why not? And they smoked crack while they were there laced in reefer. These apartments in Dove Meadows and Creekwood, they are not big apartments. You

take a three year old kid and put him in a back room with these four or five guys in the kitchen cooking up crack, I wonder what those kids smelled. . . . I venture to say you don't know. Very few people in this courtroom know what it smells like to cook up cocaine, but somewhere in this city there are kids, specific kids that have been talked about, not by name, that know what it smells like to cook up cocaine.

\* \* \* \*

How many of these kids, Janice [sic] Parker's kids, Nickie's kids, Bridgette's kids, how many of those other kids in that apartment complex when they get older, how many of them will remember the smell of cocaine cooking up? Being smoked with pot. While your house, your only place is being used to cook up crack? I don't know. That is some of the hidden cost and we will pay for it for years to come, all of us.

Defendants contend they are entitled to a new trial on the ground that these remarks were nothing more than an inflammatory appeal to the jury's prejudice and their protective feelings for children.

At trial, defendants did not object to the portions of the argument to which they now assign error. For this reason, our review on appeal is limited to a determination of whether the argument was so grossly improper that the trial court's failure to intervene *ex mero motu* constituted an abuse of discretion. *State v. Holden*, 321 N.C. 125, 362 S.E.2d 513 (1987), *cert. denied, Holden v. North Carolina*, 486 U.S. 1061, 100 L.Ed.2d 935 (1988).

Counsel is allowed wide latitude in his argument to the jury and may argue the law, the facts in evidence, and all reasonable inferences which may be drawn from them. *State v. Monk*, 286 N.C. 509, 212 S.E.2d 125 (1975). In the instant case, there was evidence in the record that children were present in Bridgette Richardson's apartment and Anita Richardson's apartment when the crack cocaine was being cooked. Although the trial transcripts fail to reveal a statement similar to the one attributed to Janet Parker, she did testify that her children lived with her, and there was evidence that defendants used her apartment on several occasions for the purpose of cooking cocaine. She also stated:

I turned them away because I was going with . . . Lennon Hawes, and he objected to me letting them come in from the beginning. See, it was like they don't go do it in their own

house. You have children to think about. They don't do it in their house. Don't let them come to your house.

It is a reasonable inference from the evidence, then, that these children could have smelled the cocaine as it was cooking. We cannot say that the prosecutor's argument was so grossly improper as to require *ex mero motu* intervention by the trial court, and we overrule this assignment of error.

## XII

[11] Defendants argue that the trial court committed reversible error in failing to grant their motions for change of venue or special venire, in light of the inordinate amount of publicity which surrounded these cases. They acknowledge, however, that in order to be entitled to a new trial on these grounds, they must proffer evidence that jurors had prior knowledge about the case, that peremptory challenges were exhausted, and that a juror objectionable to defendant sat on the jury. *State v. Dobbins*, 306 N.C. 342, 293 S.E.2d 162 (1982). Although defendants have failed to make the requisite showings they rely on *State v. Jerrett*, 309 N.C. 239, 307 S.E.2d 339 (1983) for the proposition that a showing of identifiable prejudice is not required under certain circumstances. We do not find *Jerrett* to be controlling in this case.

In *Jerrett* defendant was not required to show identifiable prejudice in support of his motion for change of venue because the totality of the circumstances showed that there was such a probability that prejudice would result, that defendant would be denied due process if venue were not changed. At the pretrial hearing the defendant presented the testimony of several attorneys, a magistrate, and a deputy sheriff who expressed opinions that it would be extremely difficult to select a jury comprised of individuals who had not heard about the case, and that due to the publicity, potential jurors had likely formed preconceived opinions concerning defendant's guilt. The jury *voir dire*, which was conducted after the denial of defendant's motion that the jury be individually selected, revealed that many potential jurors knew the victim or potential State's witnesses. A number of prospective jurors stated that they had already formed opinions in the case or felt that they could not give the defendant a fair trial. Additionally, the Court found it significant that "the crime occurred in a small, rural and closely-knit county where the entire county was, in effect, a neighborhood." *Id.* at 256, 307 S.E.2d at 348.

STATE v. CRUMMY

[107 N.C. App. 305 (1992)]

Contrary to *Jerrett*, defendants in the instant case have failed to present any evidence that the pretrial publicity "infected [the community] with prejudice" against them. *Id.* at 258, 307 S.E.2d at 349. They have made no showing that the pretrial publicity was so pervasive and inflammatory that it was reasonably likely that they could not receive a fair trial in a county such as New Hanover. In *Jerrett* the facts indicated that the pretrial publicity generated much discussion about the case among county residents and that many of the prospective jurors had heard about the case, formulated some opinion as to defendant's guilt, and knew the victim or the State's witnesses. Insofar as these facts and circumstances are not present in the case before us we do not find *Jerrett* to be dispositive. We also cannot conclude from the totality of circumstances in the instant case that there was such a probability of irreversible prejudice that the trial court's failure to grant defendant's motions for change of venue or special venire constituted a denial of due process. In this regard, a motion for a change of venue is within the trial court's discretion and, finding no abuse of discretion, we do not now disturb this ruling on appeal. *Id.*

## XIII

[12] Defendant Pierce submits the trial court erred in accepting a guilty verdict for the crime of trafficking in cocaine by transportation since the jury instructions referenced the crime of trafficking in cocaine by possession. He argues that since the verdict was not responsive to the issue submitted, it should be vacated.

Instructions to the jury must be read in their entirety and taken in context. *See State v. Alston*, 294 N.C. 577, 243 S.E.2d 354 (1978). In this case the trial court grouped the charges and instructed on trafficking in cocaine by possession as it related to each defendant so charged. The court next instructed on trafficking in cocaine by manufacturing and then trafficking in cocaine by transportation with regard to each defendant. It is clear from the transcript that the court simply mistakenly used the word "possession" in one instance when it meant "transportation." Having read the jury instructions in its entirety, we cannot conclude this one *lapsus linguae* amounts to reversible error. We note that at the end of the instruction the trial court further advised the jury that the charge was trafficking in cocaine by transportation. The possible verdict sheet concerning defendant Pierce which was submit-

ted to the jury also recited the charge as "trafficking in cocaine by transporting 400 grams or more of it from Washington, D.C., to Wilmington, North Carolina, in Early December, 1987." We therefore find the instructions were sufficiently clear on the charge of trafficking in cocaine by transportation and defendant has failed to present any evidence that the jury misunderstood the charge or was otherwise confused. Furthermore, counsel for defendant Pierce did not timely object to any portion of the jury instructions and therefore is barred from now objecting on appeal. Rule 10(c)(2), N.C. Rules of Appellate Procedure.

## XIV

[13] Lastly, defendant Pierce contends the trial court erred in denying his motion for severance from the trial of Crummy and McGhee. He argues that joinder was improper because the bulk of the trial centered on Crummy's activities and offenses which inhibited the jury's separate consideration of defendant Pierce's guilt or innocence and resulted in the jury essentially rubber-stamping a verdict against him.

G.S. 15A-926(b)(2)b provides that joinder is proper where the offenses charged are part of a common plan or scheme, part of the same act or transaction or were so closely connected in time, place and occasion that it would be difficult to separate proof of one charge from proof of the others. Clearly, the multiple charges of trafficking in cocaine through possession, manufacturing, and transportation, and the conspiracy are within the purview of the statute.

A trial court's ruling on joinder or severance is within the court's discretion and will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Short*, 322 N.C. 783, 370 S.E.2d 351 (1988). We find no abuse of discretion in the instant case. Additionally, defendant Pierce has failed to satisfy his burden by showing he was deprived of a fair trial and prejudiced as a result of the joinder. *Id.* Consequently, we overrule this assignment of error.

No error.

Judges LEWIS and WYNN concur.